**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| WILLIAM SOLOMON LEWIS, | : | Civil No. 3:15-cv-319 |
|---|---|---|
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| C. MAIORANA, | : | |
| | : | |
| Respondent | : | |

**MEMORANDUM**

Presently before the Court is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2241 filed by Petitioner, William Solomon Lewis, an inmate currently confined at

the United States Penitentiary, Canaan, in Waymart, Pennsylvania ("USP-Canaan"). (Doc.

1). Named as the Respondent is C. Maiorana, Warden of USP-Canaan. Lewis claims that

his due process rights were violated in the context of a prison disciplinary hearing. The

petition is ripe for disposition and, for the reasons that follow, will be denied.

I.     **Background**

On March 23, 2012, while incarcerated at the United States Penitentiary, McCreary,

in Pine Knot, Kentucky, Lewis was charged in incident report number 2283439 with refusing

to participate in a required physical test or examination unrelated to testing for drug abuse,

in violation of Federal Bureau of Prisons ("BOP") Prohibited Acts Code Section 227. (Doc.

4-1, p. 27). A disciplinary hearing was held and the disciplinary hearing officer ("DHO")

ultimately found that Lewis committed the act as charged and sanctioned him with a loss of

27 days of good conduct time, 15 days of disciplinary segregation, and 60 days loss of commissary privileges.  (Doc. 4-1, p. 59).

The instant petition was filed on February 12, 2015.  (Doc. 1).  In the petition, Lewis argues that he did not refuse to participate in a required physical test or examination.  (Doc. 1, p. 12).  For relief, Lewis requests that the Court restore his good time credits and expunge the incident report.  (*Id.*).

## II.   Discussion

Respondent argues that the petition should be denied because Lewis was afforded all of his procedural rights, and "some evidence" supports the finding of the disciplinary hearing officer regarding incident report number 2283439.  (Doc. 4, pp. 6-11).

As stated, on March 23, 2012, Lewis was served with incident report number 2283439 charging him with a code 227 violation for refusing to participate in a required physical test or examination unrelated to testing for drug abuse.  (Doc. 4-1, pp. 26-27).  The incident report describes the incident as follows:

> Inmate Lewis was placed on call out to receive his Annual Tuberculin Skin Test.  He did not show for his call out[,] the inmate was then called for and was sent by his housing unit officer to health services.  The inmate was instructed what his call out was for (PPD Testing) and he reports that he is going to refuse to take the test.  It was explained to the inmate that he has no PPD testing on file in the BOP records, only refusals of the PPD are documented, the inmate has negative Chest x-ray reports on file but due to program statement related to Infectious disease management P6190.03 the inmate is required to participate in the PPD testing annually unless he has a history of +PPD or severe reactions and may not request a chest x-ray for

2

screening purposes. The program statements requirements were discussed with the inmate to make him aware of the policy. The inmate states that he has not had a +PPD nor does he have severe reactions, he chooses not to have the tuberculosis injected into his body. I again explained PPD testing was required and that the Purified Protein Derivative was not harmful to him. The inmate continued to refuse and state that he would not be participating in TB testing and he would have to be held down and forced to take the test. I explained to him that today if he refused that he would receive an[] incident report with a 200 series charge. I reported the decision to use force is not mine but that the information would be forwarded to the appropriate persons, the inmate stated "that's fine, write me a shot" he then ask[ed] to speak with a Dr. I told him we did not have a Dr. available today but I would see if his MLP could speak with him[.] [H]e refused to speak with the Mid-Level Provider and ask[ed] when a Dr. would be available to speak with[.] I instructed him I could no[t] answer that question because I was not sure and that he could speak with a MLP to discuss the situation, he again refused to speak with the MLP. He ask[ed] if he could leave health services, the inmate was released back to his housing unit.

(Doc. 4-1, p. 27, Incident Report).

On March 23, 2012, the investigating lieutenant gave Lewis advanced written notice of the charges against him. (*Id.* at ¶¶ 14-16). During the investigation, Lewis was advised of his right to remain silent, and he indicated that he understood his rights. (*Id.* at ¶¶ 24, 26). Lewis had "no comment" and did not request any witnesses. (*Id.* at ¶¶ 24-25). At the conclusion of the investigation, the lieutenant recommended that the incident report be processed as written, and he referred the incident report to the Unit Discipline Committee ("UDC") and disciplinary hearing officer for final disposition. (*Id.* at ¶ 29).

On March 27, 2012, Lewis appeared before the UDC. (*Id.* at ¶¶ 17-21). Lewis stated, "I refuse to have the TB virus injected in my body." (*Id.* at ¶ 17). After the hearing,

3

the UDC referred the charge to the DHO due to the seriousness of the charge, and

recommended that sanctions be imposed if Lewis was found guilty. (*Id.* at ¶ 20).

On March 27, 2012, a staff member provided Lewis with a copy of the "Inmate Rights

at Discipline Hearing" form and "Notice of Discipline Hearing before the Discipline Hearing

Officer (DHO)" form. (Doc. 4-1, pp. 30-31). Lewis signed for his copies of the forms.

On April 25, 2012, Lewis appeared for a hearing before DHO Gary Mehler.[1] (Doc. 4-

1, p. 55-60, DHO Report). During the April 25, 2012 DHO hearing, the DHO confirmed that

Lewis received advanced written notice of the charges on March 23, 2012, that he had been

advised of his rights before the DHO on March 27, 2012. (*Id.* at p. 55). The DHO again

advised Lewis of his rights, and Lewis indicated that he understood them. (*Id.* at p. 57).

Lewis waived his right to a staff representative and did not request to call any witnesses.

(*Id.* at pp. 55-57). Lewis made the following statement regarding the charges:

> The DHO read aloud Section 11 of the incident report, asked if the report was
> true, and gave him the opportunity to provide his statement. He replied, "it's
> true, at that time I did refuse the PPD test. I wasn't asked if I'd had a severe
> reaction. Due to my medical condition, I don't want that TB virus injected into
> me." [(]initial hearing/ postponed 04-04-2012), "I had a previous severe
> reaction" (2nd hearing/ postponed continued 04-18-2012), "I'll see you in
> federal court, I'll take it all the way with a Bivens suit" (final hearing 04-25-

---

[1]    Lewis' initial disciplinary hearing was scheduled on April 4, 2012. (Doc. 4-1, p. 57). At the
hearing, Lewis claimed that he did not receive a copy of the incident report, even though the record
indicated that Lewis previously received the incident report on March 23, 2012. The hearing was
postponed to allow Lewis the ability to obtain a copy of the incident report. On April 18, 2012, the
disciplinary hearing reconvened, but was again rescheduled at Lewis' request to provide him an
opportunity to review Policy Statement § 6190.03. The disciplinary hearing then proceeded on April 25,
2012.

4

2012). At the 04-18-2012 hearing he provided written documentary evidence for the DHO to consider. It states, "Program Statement 6190.03 states, that all inmates are screened annually for TB. As noted in the disciplinary report #2283429 a recent negative chest x-ray is on file in his BOP medical records. The Program Statement states, that a CD or designee can authorize a chest x-ray as a substitute for a tuberculin skin test. (This was done previously in FDC-Houston). The Program Statement states, an inmate who refuses TB screening may be subject to an incident report for refusing to obey an order. If an inmate refuses skin testing, and there is no contraindictation (sic) to tuberculin skin testing, then, institutional medical staff will test the inmate involuntarily. The Program Statement indicates that a chest x-ray may be used as a substitution when there is medical contraindictation (sic). A contraindication [] to receiving a tuberculin skin test according to the Program Statement 6190.03 occurrs (sic) when "severe blistering" has been documented or described by the inmate. For this reason an M.D. pursuant to Program Statement 6190.03 authorized a chest x-ray at BOP FDC-Houston recently. All efforts as noted in the disciplinary report to speak to an M.D. concerning this issue were denied by V. Barnett (clinical nurse) about a potential allergic reaction to tuberculin skin tests. Signed William Solomon Lewis 4/1/12.

(*Id.* at p. 56).

Based on the evidence presented at the hearing, the DHO found that Lewis

committed the act as charged. (*Id.* at pp. 56-57). In arriving at this conclusion, he stated

the following:

The finding is based in part on the written statement of V Barnett, clinical nurse, who attests that on 03-23-2012, at approximately 2:00 P.M., inmate Lewis was placed on call out to receive his annual tuberculin skin test. He did not show for his call out[.] The inmate was then called for and was sent by his housing unit officer to health services. The inmate was instructed what his call out was for (PPD testing) and he reports that he is going to refuse to take the test. It was explained to the inmate that he has no PPD testing on file in the BOP records, only refusals of the PPD are documented, the inmate has negative chest x-ray reports on file but due to Program Statement related

to infectious disease management PS6190.03 the inmate is required to participate in the PPD testing annually unless he has a history of +PPD or severe reactions and may not request a chest x-ray for screening purposes. The Program Statements requirements were discussed with the inmate to make him aware of the policy. The inmate states that he has not had a +PPD nor does he have severe reactions, he chooses not to have the tuberculosis injected into his body. I again explained PPD testing was required and that the purified protein derivative was not harmful to him. The inmate continued to refuse and state that he would not be participating in TB testing and he would have to be held down and forced to take the test. I explained to him that today if he refused that he would receive and (sic) incident report with a 200 series charge. I reported the decision to use force is not mine but that the information would be forwarded to the appropriate persons, the inmate stated "that's fine, write me a shot" he then ask[ed] to speak with a Dr. (Doctor) I told him we did not have a Dr. available today but I would see if his MLP (mid-level provider) could speak with him[.] [H]e refused to speak with the mid-level provider and ask[ed] when a Dr. would be available to speak with[.] I instructed him I could no (sic) answer that question because I was not sure and that he could speak with a MLP to discuss the situation, he again refused to speak with the MLP. He ask[ed] if he could leave health services, the inmate was released back to his housing unit.

The DHO notes you elected to make no statement regarding this incident to the investigating lieutenant. At your initial hearing with the UDC you stated, "I refuse to have the TB virus injected in my body."

The DHO took into consideration and could not ignore, that during the initial DHO hearing, you admitted to committing the prohibited act by stating, "it's true, at that time I did refuse the PPD test. I wasn't asked if I'd had a severe reaction. Due to my medical condition, I don't want that TB virus injected into me." Your statement/testimony was consistent with what you stated to nurse Barnett the day of the incident, and at your initial hearing with the UDC. That being simply that you did not want the virus injected into your body.

The DHO made a finding of guilt based on all relevant evidence at that time, and while imposing sanctions, you claimed you hadn't had the opportunity to review the Program Statement to prepare a defense, and based it on the allegation of not having received your copy of the incident report. Under the

6

circumstances, the DHO elected to "postpone" the hearing to allow you time to review the program statement in order to prepare a defense. It should be noted, at no time in this process, up to this point, had you claimed a prior severe reaction to PPD testing.

After allowing you ample time to review the Program Statement (PS6190.03, Infectious Disease Management), the DHO hearing was re-convened on 04-18-2012. At the hearing you submitted written documentary evidence and claimed you had a prior "severe reaction to PPD testing." Your written documentary evidence centered around your claim of having had a severe reaction to PPD testing, and continued that you should not be forced to take a PPD test because of this claim. The DHO took into account that Section 11 of the incident report states, "the inmate states that he has not had a +PPD nor does he have severe reactions, he chooses not to have the tuberculosis injected into his body." The DHO gave greater weight to the attestment of nurse Barnett. Documenting you not only had not claimed to have had a prior severe reaction to PPD testing, but you yourself admitted that you had "not" had a prior severe reaction to PPD testing, and merely did not want the tuberculosis (virus) injected into your body. The DHO found it reasonable to believe you had contrived this defense over a period of time as you had not mentioned it previously at any stage of the discipline process, even during your admission to refusing the test, during the initial DHO hearing. Nonetheless, the DHO decided to seek clarification of the issue with medical services, and continued the discipline process in the "postponed" status in order to address this now new defense of having had a prior severe reaction to PPD testing.

The DHO sought clarification from medical services regarding this issue, and asked that your medical records be reviewed for possible documentation of a prior severe reaction to PPD testing. After a review of your records, nurse Barnett reported there was not only no documentation of a prior severe reaction, but noted you also checked "no" to any allergies during your initial medical intake screening on 02-29-2012. Therefore, the DHO can find no merit in your statement, verbally or written, of having had a previous allergic reaction to testing.

Lastly, the DHO notes, during the 04/25/2012 hearing, you claimed you had not received a copy of your rights. You had acknowledged prior that you not

only received a copy, but acknowledged you understood your rights. You
made no claim of this during your initial hearing. The DHO noted, and
pointed out to you at the hearing, you yourself had signed the rights form on
03-27-2012 during your UDC hearing. At that time you had no statement.
The DHO found it more reasonable to believe this was another attempt to
disrupt the discipline process in this case, and proceeded with the hearing.

(*Id.* at pp. 57-59).

In addition to the incident report and investigation, the DHO considered documentary

evidence consisting of Program Statement 6190.03, Infectious Disease Management. (*Id.*).

After consideration of the evidence, the DHO found that the greater weight of the

evidence supported a finding that Lewis committed the prohibited act of "refusing to

participate in a required physical test or required examination unrelated to testing for drug

abuse (e.g., DNA, HI[V], tuberculosis), code 227." (*Id.* at p. 59). As such, the DHO

sanctioned him with a loss of 27 days of good conduct time, 15 days of disciplinary

segregation, and 60 days loss of commissary privileges. (*Id.*). The DHO documented his

reasons for the sanctions given as follows:

> The action/behavior on the part of any inmate to refuse to participate in a
> physical test or required examination unrelated to testing for drug abuse (e.g.,
> DNA, HIV, tuberculosis) interferes with the staff's ability to enforce policies,
> United States statutes, and CFR requirements. An inmate's refusal to take
> part in the testing process effects the secure and orderly running of the
> institution, forces staff to use calculated force to complete the test, and can
> effect the health and welfare of staff and other inmates. This type of
> action/behavior will not be tolerated from any inmate. The DHO sanctioned
> you to disciplinary segregation to punish your behavior and disallowed 27
> days good conduct time to hold you accountable for your actions. The
> disallowance of good time sanction was imposed as required by sentencing

8

guideline (PLRA). The DHO also sanctioned you to commissary restriction to deter you from engaging in such activities. The DHO hopes these sanctions will convince you to abide by all institution rules and regulations and will also emphasize to you this type of behavior will not be tolerated.

(*Id.*).

Lewis was advised of his appeal rights at the conclusion of the hearing. (*Id.*).

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* As Lewis' sanctions did include the loss of good conduct time, he has identified a liberty interest in this matter.

When a DHO hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive the following due process protections: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; (3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an

adequate comprehension of the case; (4) an impartial tribunal; and (5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564-572. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. §

541.4(c).  If the UDC finds that a prisoner has committed a prohibited act, it may impose

minor sanctions.  28 C.F.R. § 541.7(f).  If the alleged violation is serious and warrants

consideration for more than minor sanctions, or involves a prohibited act listed in the

greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for

a hearing.  28 C.F.R. §§ 541.7(a), (g).  The inmate will receive written notice of the

charge(s) against him at least twenty-four hours before the DHO's hearing, however the

inmate may waive this requirement.  28 C.F.R. § 541.8(c).  The inmate is entitled to have a

staff representative, appear at the hearing, make a statement, present documentary

evidence, and present witnesses.  28 C.F.R. §§ 541.8(d), (e), (f).  Following the hearing, the

inmate will receive a written copy of the DHO's decision.  28 C.F.R. § 541.8(h).

      In the instant case, it is clear that Lewis was afforded all of the required procedural

rights set forth in *Wolff*.  He received timely notice of the incident report.  He was properly

informed of his rights before the hearing, as well as given the opportunity to make his own

statement, present documentary evidence, have a staff representative, and to present

witnesses on his behalf.  Lewis also received a written decision setting forth the evidence

relied upon by the DHO and the rationale behind the decision.  Lewis was then notified of

his right to appeal.

      Since Lewis was afforded all of his procedural rights, the only remaining issue is

whether there was sufficient evidence to support the decision by the DHO.  The record

clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. The DHO considered Lewis' statement that he "refuse[s] to have the TB virus injected in [his] body." He further considered Lewis' admission during the initial DHO hearing wherein he stated, "it's true, at that time I did refuse the PPD test. I wasn't asked if I'd had a severe reaction. Due to my medical condition, I don't want that TB virus injected into me." The DHO also examined written documentary evidence wherein Lewis claimed that he had a prior severe reaction to PPD testing, and determined that Lewis fabricated this defense as he never once mentioned a severe reaction to the test. The DHO nonetheless requested review of Lewis' medical records. The nurse reported that Lewis does not have any documented history of an allergy to the test. Additionally, Lewis admitted on his initial medical intake screening that he had no allergies. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Lewis was found guilty of a 200-level, high category prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level offenses:

A.  Recommend parole date rescission or retardation.
B.  Forfeit and/or withhold earned statutory good time or non-vested good

> conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
>
> B.1   Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
>
> C.   Disciplinary segregation (up to 6 months).
> D.   Make monetary restitution.
> E.   Monetary fine.
> F.   Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
> G.   Change housing (quarters).
> H.   Remove from program and/or group activity.
> I.   Loss of job.
> J.   Impound inmate's personal property.
> K.   Confiscate contraband.
> L.   Restrict to quarters.
> M.   Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

Accordingly, the petition will be denied as to incident report number 2283439.

## III.   Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate Order will issue.

Date: October __7__, 2016

Robert D. Mariani
United States District Judge